**HALE, Plaintiff, v. McCHESNEY et, Defendants.**

Common Pleas Court, Summit County.

No. 175678.   Decided February 6, 1951.

William Whelton, Cuyahoga Falls, for plaintiff.
Mark McChesney, Akron, for defendant.

## FINDING

By EMMONS, J.

Fred J. Hale, as plaintiff in this case which was filed April 17, 1950, claims that in May, 1948, the Auditor of Summit County, for himself and as agent for the State of Ohio, duly offered for sale at public auction certain lands and lots forfeited to the State for nonpayment of taxes, assessments,

penalties, interest and costs, among said lots being lots 65, 67, 68 and 69 of the Mogadore Heights Allotment as recorded in Plat Book 28, pages 36 and 37 of the Summit County Record of Plats, said lots being situated in the Village of Mogadore in said County, and that said sale was in all respects in conformity to law.

It is further claimed that on the day of the sale he was the highest bidder for said property, and upon payment of the bid price a certificate of sale was issued for lot 65 on June 7th, 1948, and the Recorder accepted for notation this certificate on the same day, and that the Auditor's certificates for lots 67, 68 and 69 were dated May 17, 1949, and accepted by the Recorder for notation on May 17, 1949, said certificates of sale being Torrens Instruments Nos. 73311, 76160, 76161, and 76162, and the Recorder did accept for notation on May 30, 1949, the Auditor's deed for lot 65, being Torrens Instrument No. 75739, and on August 8, 1949, accepted for notation Auditor's deed to lots 67, 68 and 69, being Torrens Instrument 76960; that the defendant, John McChesney, was the owner of these four lots, acquiring title thereto August 5, 1948, by way of Administrator's Deed, which the Recorder accepted for notation on August 17, 1948, being certificate No. 22935 issued by the Registered Land Division of Summit County, which deed was given subject to the rights of the State of Ohio and the several purchasers from the State of Ohio.

Plaintiff then asks that this matter be referred to an examiner of registered land titles in accordance with §8572-59 GC; that the Court order the Recorder of Summit County to register the titles of said lots 65, 67, 68 and 69 in the name of the plaintiff herein and to issue to the plaintiff a new certificate of title for such land, and such other relief as is just and equitable.

To these claims the defendants have filed a general denial, and this case came on to be heard upon the issues so raised, and upon trial being duly had the Court finds that on June 21, 1947, an action was commenced by the Administrator of the estate of Alice Norris, deceased, to sell these and other lots. On December 22, 1947, the Probate Court in its civil proceeding ordered the lots in question sold subject to the rights of the State of Ohio and the several purchasers from the State of Ohio, and on December 31, 1947, the Court of Common Pleas ordered the forfeiture of these lots to the State of Ohio. On August 5, 1948, after the title examiner's report had been

filed the Probate Court confirmed the sale and ordered the deed, which was registered in the name of John M. McChesney showing title in him as of August 17, 1948.

Counsel for the defendants ask the Court for determination of this question: Did the fact that the Probate Court of Summit County entertained an action to sell the lots in question preclude the Common Pleas Court of Summit County from authority to order a foreclosure?

Sec. 5713 GC provides in part:

"The state shall have a first and best lien on the lands and lots described in the delinquent land list for the amount of taxes * * *"

In the confirmation of the sale by Probate Court the journal entry is as follows:

"It appearing further to the Court that during the pendency of this action said lands were declared forfeited to the State of Ohio and a part of said lands sold by the Auditor under such finding of forfeiture, that the deed aforesaid be made subject to the rights of the State of Ohio and the several purchasers without attempting in any manner to adjudicate the rights so acquired."

The Probate Court ascertaining that a hearing on the forfeiture of these and other lots was ordered by the Common Pleas Court on December 2, 1947, said hearing to be held on December 29, 1947, and realizing by §7313 GC that the state had the first and best liens on these lots for taxes and so forth, sold them to the defendant subject to the rights of the State of Ohio and those purchasing from the State.

Whatever jurisdiction the Probate Court had as to the sale of these lots, it saw fit to surrender to the Common Pleas Court because of the forfeiture proceedings being maintained in the Common Pleas Court, and the defendant here cannot in this instance complain about the order of forfeiture not being filed by the Clerk with the Recorder and noted by him after he accepted the Administrator's Deed subject to the rights of the State of Ohio and those claiming through the State, for to allow such a complaint to stand the Court would be permitting the defendant to circumvent the reservations contained in the deed. If such reservations had not been set out in the Administrator's Deed then the forfeiture action could have been declared by this Court as non lis pendens because of a failure to comply with §8572-55 GC, and as such the proceedings in Probate Court would prevail to vest a good

and sufficient title in the defendant, but in this instance the Probate Court's reservation in the Administrator's Deed is legally sufficient to invest the Common Pleas Court with sufficient jurisdiction.

The plaintiff asks the question in his brief as to whether the failure to comply strictly with all of the provisions of §§5704, 5707, 5718-1B GC deprive the Common Pleas Court to enter the decree of foreclosure.

It is to be remembered that in this case we are dealing with Torrenized land as provided for in §8572-1 to §8572-118 GC.

This land is registered as compared with unregistered land. Owners of registered land are entitled to a more strict compliance with the statute than are the owners of unregistered lands. The very fact that the memorial of Torrenized land, kept by the Recorder, is of itself a definite certificate of title makes it mandatory for such a strict compliance with the statutes, whereas with unregistered land—especially in so far as the statutes dealing with the sale of forfeited lands are concerned—these should be loosely construed.

The case of **Greenvale Homes Corporation v. Marting, CP 56 Abs 80, 86 Oh Ap 445**, 93 North Eastern 2nd, 305:

"A failure to comply with all of the provisions of §§5704, 5707 and 5718-1B GC—e. g., the publication of only part of the delinquent tax list in one issue of one of the newspapers, and remainder of the list in another issue of the same paper; failure to include the closing words of the form of notice set out in §5707 GC at the end of the delinquent tax list in one issue of the two newspapers in which the list was published; and failure to publish the notice of hearing in newspapers of opposite political faith—does not deprive the Court of Common Pleas of jurisdiction to enter a decree of forfeiture; and such a decree, if entered, is a final order, whether or not erroneous, and whether or not the defects in question would have furnished a basis for objection at the time of said hearing."

Judge Perry Stevens, in his pronouncement in the Greenvale Homes Corporation case, supra, said:

"Sec. 5718-1C GC defines what are 'legal objections' as used in this grant of jurisdiction to the Common Pleas Court, and the irregularities shown by this record to have occurred antecedent to forfeiture are such as, under the statute, would have furnished a basis for the interposition of legal objections on the part of an objector. However, such irregularity, omission or informality not having been utilized as the basis

for objection to the finding of the court, that finding, when entered, became a valid, subsisting judgment, not subject to collateral attack, and by law subject to appeal as in other civil actions."

This case deals with unregistered land, and further, the statute of limitations had run—it being a longer period than one year after the deed to such property was recorded.

In 39 O. A. G. at page 1178, the attorney general said in his opinion:

"Where unregistered lands are sold at forfeiture sale, the purchaser acquires title as provided in §5762 GC, upon presenting his certificate of sale and the sum of $1.25 to the county auditor and receiving from the auditor a deed which is prima facie evidence of his title. In the case of registered lands, however, title does not pass until the purchaser has complied with the requirements of §8572-58 GC."

Sec. 5762 GC provides:

"The county auditor on making a sale of a tract of land to any person under this chapter shall give such purchaser a certificate thereof. On producing or returning to the county auditor the certificate of sale, the county auditor, on payment to him by the purchaser, his heirs, or assigns, of the sum of one dollar and twenty-five cents shall execute and deliver to such purchaser, his heirs, or assigns, a deed therefore in due form, which deed shall be prima facie evidence of title in the purchaser, his heirs, or assigns. When a tract of land has been duly forfeited to the state and sold agreeably to the provisions of this chapter, the conveyance of such real estate by the county auditor shall extinguish all previous title thereto and invest the purchaser with a new and perfect title, free from all liens and encumbrances, except such easements and covenants running with the land as were created prior to the time the taxes or assessments, for the non-payment of which the land was forfeited, became due and payable."

Does this statute void §8572-58 GC, which is as follows:

"A tax deed of registered land, or an estate or interest therein, issued in pursuance of any sale for a tax, assessment or other imposition, made after the taking effect of this act, shall have only the effect of an agreement for the transfer of the title upon the register. And before any person dealing with such land shall be affected by such tax deed said deed must be filed in the recorder's office and a memorial of such filing be made by the recorder on the registered certificate of

title for such land. But no registration of title under such tax deed shall be made, or certificate of title issued thereon, unless the tax deed is filed within sixty days after its date, or in any case except upon the order of the court, on application therefor by petition to which all persons in interest shall be made parties and brought before the court. Any person interested in the land may show, as cause why such certificate of title shall not issue, any fact that might be shown at law or in equity on his behalf to set aside such tax deed; and the party named in the tax deed shall be required to show affirmatively that all of the requirements of the statute to entitle him to a deed have been strictly complied with; and in such suit the court may decree such deed and tax sale under which the same was issued to be invalid for the purposes of entitling the purchaser or grantee to a transfer of the title to said land and order the same to be cancelled upon the payment by any party in interest to said purchaser or grantee of the amount so paid by him on such tax sale and subsequently as taxes on the property, together with interest on all such sums."

In **145 Oh St, page 447, State ex rel Droper et al v. Wilder, Recorder:**

"Syllabus 1. Sec. 5762 GC, relating to the title acquired by the purchaser of land forfeited to the state for the non-payment of taxes and sold by a county auditor at tax sale, does not repeal by implication §8572-58 GC, a part of the Torrens Act, setting forth the steps and procedure necessary to register title to theretofore registered land obtained under a tax deed * * *"

**37 O. Jur., page 405, section 143:**

"The rule is too well established to require discussion that the repeal of statutes by implication is not favored in law, and the presumption is always against the intention to repeal an existing statute when express terms indicating that intention are not employed."

**141 Oh St, page 553, Groene v. Boyle, County Treasurer:**

"* * * the purpose of the Torrens Act is to secure by decree of court a title to land impregnable against attack, to make a permanent and complete record of the exact status of the title with all liens and incumbrances and claims against it, and to protect the registered owner against all claims and demands not noted on the back for the registration of titles."

Judge Zimmerman, in **145 Oh St 452,** quoted supra, made the following pronouncement:

"And then §8572-58 GC specifically covers the registration of titles to lands theretofore registered, which have been purchased at a tax sale, and expressly prescribes the steps necessary to obtain registration of the title of lands so purchased. Whether the Torrenization of the title of land is desirable is a disputed matter, but once Torrenization occurs the applicable statutes are controlling and may not be ignored. * * *"

"The chapter of the code entitled 'Registration of Land Titles' is complete and self-contained, and so long as it remains a part of the statutory law of this state it must be recognized.

"Now §5762 GC, as effective August 11th, 1943, was placed in the chapter headed 'Forfeited Lands.' Of course, it definitely applies to unregistered lands, but makes no reference to registered lands, as could have been done, and until the General Assembly sees fit to express itself clearly on the subject by appropriate legislation, we are unwilling to hold that §8572-58 GC has been repealed by implication."

The defendant in his brief sets out the fact that §8572-83 GC provides that:

"No petition, order, affidavit, certificate registration or other proceeding under this act shall be invalid by reason of any informality, mistake, technical irregularity therein not affecting the substantial justice of the proceeding or the substantial rights of any party or person in interest."

and §8572-101 GC which provides:

"This act shall be construed liberally for the purpose of effecting its general intent,"

and claims, therefore, that as long as substantial justice is done the chapter dealing with registration of land titles should be construed liberally.

But in considering this claim the Court's attention is directed to §8752-58 GC, which is also a part of the chapter on registration of land titles, and a part of which is as follows:

"and the party named in the tax deed shall be required to show affirmatively that all of the requirements of the statute to entitle him to a deed have been strictly complied with."

37 O. Jur., page 409, section 150:

"As a general rule, general statutory provisions do not control or interfere with specific provisions, but on the contrary, to the extent of any irreconcilable conflict, the special provisions generally operate as an exception to the general provision, which accordingly must yield to the former."

**37 O. Jur., page 412,** part of section **151:**

"The general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment."

Secs. **8572-58, -83** and **-101 GC** were all passed at the same time, all being a part of the same bill, and repeal of statutes by implication will not be indulged in by the Court unless there is no possible reconciliation of these statutes, and unless the words of specific repeal are used—there is a presumption against legislative intent to repeal.

The provision of §8572-58 **GC** is a specific provision under the registration of land titles, and as such controls in so far as tax deeds of registered land or an estate or interest therein, for if the Court were to say that §§8572-83 and **-101 GC** are controlling it would be an attempt to make the provisions of §§8572-83 and **-101 GC** control over a specific provision, so that in so far as a tax deed of registered land or an estate or interest therein is concerned §8572-58 **GC** is the controlling statute, so that excepting for this type of sale or lien substantial compliance and liberal construction of the registration of land titles would, under this statute, prevail.

By §8572-58 **GC** the burden is upon the party named in the tax deed (who is the plaintiff in this action) to show affirmatively, or by the greater weight of the evidence, that all the requirements of the statute to entitle him to a deed have been complied with.

What are the facts in this case?

Instead of proving affirmatively that all of the requirements of the statutes to entitle the plaintiff herein to a deed have been strictly complied with, counsel for plaintiff admits there were some irregularities and informalities noted, but contends that these were in the preliminary steps and procedure concerning the forfeiture of these lots to the State of Ohio, and that informalities and irregularities in these steps of the preliminary matters up to and including the forfeiture does not vitiate the forfeiture proceedings under the doctrine laid down in Greenvale Homes Corporation v. Marting, cited supra.

With this contention the Court cannot agree, for that decision was rendered in a case involving unregistered land, while this concerns registered lands. Sections of the statutes applying to the sale of unregistered lands are loosely construed and a substantial compliance is sufficient, but as regards Torrenized land, a strict compliance with the statute

is necessary to make tax forfeiture sales by the auditor valid. Further, in the Greenvale Homes Corporation case the statute of limitations also prevailed, and in this case it does not.

The most glaring violation of the statute as affecting the sale is the fact that the Court forfeiting certain lands to the State of Ohio (including lots 65, 67, 68 and 69) filed a journal entry of forfeiture on December 31, 1947. This entry was not certified under the hand and seal of the clerk and filed in the office of the recorder as provided by §8572-50 GC. Later a list of registered lands sold was filed, and this purported to be a journal entry of the Common Pleas Court correcting such oversight. However, such action does not comply with §8572-50 GC, and then such entry even fails to mention lot 65. Further, no notice of such entry or such certificate of sale and deeds was sent by registered letter or served personally upon McChesney in compliance with §8572-78 GC.

Did failure to comply with §§5704, 5707, 5718-1B, 8572-50 and 8572-78 GC render said deed and tax sale, under which the same was issued, invalid so that the Court should order said deed cancelled upon payment by John McChesney to Fred Hale, the plaintiff, the amount so paid by Hale to the Auditor for lots 65, 67, 68 and 69 of the Mogadore Heights Allotment in Summit County, Ohio?

Sec. 8572-58 GC provides in part:

"But no registration of title under such tax deed shall be made or certificate of title issued thereon unless the tax deed is filed within sixty days after its date, or, in any case, except upon the order of the court on application therefor by petition to which all persons in interest shall be made parties and brought before the court. Any person interested in the land may show as cause why such certificate of title shall not issue, any fact that might be shown at law or equity on his behalf to set aside tax deed, and the party named in the tax deed shall be required to show affirmatively that all the requirements to entitle him to a deed have been strictly complied with."

There is no question in the Court's mind that an ambiguity exists in this particular part of the statute just referred to. Does it mean that if the tax deed is filed within sixty days after its date with the recorder, then no application or petition is needed to register the title to land? Does filing within sixty days preclude the former owner in presenting facts which might be shown in law or equity preventing the registration of the deed? Does filing within sixty days excuse the

interested party from showing affirmatively all requirements to entitle him to a deed, have been strictly complied with? Does filing the deed after the expiration of sixty days preclude the grantee of the tax deed an opportunity of filing an application to register the same, and does it preclude the original owner the right to assert what interest he may have remaining in the said land?

This Court does not think so in any of the above respects.

In order to explain this ambiguity it will be necessary to refer to parts of §8572-6 and §8572-7 GC, which are parts of the same act.

Sec. 8572-6 GC provides in part:

"No title derived through or under any tax sale or tax deed shall be entitled to be first registered unless it shall be made to appear that title under tax sale or tax deed has been duly established and confirmed or acquired by a valid judgment or decree of a court of competent jurisdiction."

Sec. 8572-7 GC provides in part:

"Application to register the title to land or to any estate or interest therein shall be made by petition as in the commencement of a civil action filed in the Probate or Common Pleas Court of the county in which the land is situated. Upon filing the application the clerk shall forthwith cause to be filed in the office of the recorder of Summit County * * * in which * * * the land lies a memorandum stating that application for registration has been filed, the date and place of filing and a copy of the description of the land contained in the application."

Reading these statutes together, the Court came to the definite conclusion that that part of §8572-58 GC which provides:

"but no registration of title under such tax deed shall be made and certificate issued thereon unless the tax deed is filed within sixty days after its date"

is simply directory, while the part immediately following:

"or in any case except upon the order of the court upon application therefor by petition, to which all persons in interest shall be made parties and brought before the court"

is mandatory, and that unless this is followed, regardless of when the tax deed is filed, no registration of the tax deed can be affected.

Lot 65 was not filed within sixty days of the date of the tax deed, but lots 67, 68 and 69 were. However, since the Court has conclusively decided that an application for registration of a tax deed or an estate or interest therein can be

made regardless of when the deed was filed, then the dates of the filing of said deeds is of no concern to this Court.

In conclusion, the Court finds that since the administrator's deed was given to John McChesney subject to the rights of the State of Ohio and purchasers from the State of Ohio, that the Probate Court relinquished whatever jurisdiction it acquired and allowed the Common Pleas Court to thereafter assume it; that an application or petition to register a tax deed or other estate or interest in registered lands may be filed at any time after the filing of the tax deed; that to entitle the petitioner permission to register his tax deed, the petitioner must prove affirmatively that he has strictly complied with the requirements of the statutes, which in this instance was not done.

It is therefore the conclusion of this Court that the two deeds—one for lot 65 and one for lots 67, 68 and 69—are invalid, as well as the tax sale affecting these lots, and that the said deeds be cancelled upon the payment by John McChesney to said Fred Hale the amount so paid by Hale on said tax sale and subsequent taxes on said lots, together with interest on said sums.

Journal entry to be prepared to conform to the Court's finding, saving exceptions to both plaintiff and defendant.